I'm David Geffin. I'm counsel for the plaintiff, Ms. Baughman. I'm also counsel for the appellant, Ms. Baughman. I have some statement I'd like to read, if the court will indulge me. And I have been working diligently to keep it below the ten-minute standard. Feel free to interrupt me at any point in time. Let me interrupt you now, then. Yes, please. Isn't the appropriate remedy at this stage to remand to the district court to allow it to consider the new regulation? Your Honor, I certainly agree that it should be considering the new regulation. I don't know whether the judicial estoppel argument would stand, and that is obviously a concern to me. But the new regulation just enhances the prior law, which required accommodation. Well, the district court could reconsider the judicial estoppel issue also, in light of the new regulation. I don't believe the judicial estoppel argument would keep – the court held that the judicial estoppel kept us from saying that my client had never used a wheelchair before. And I think that that instruction to the jury would be prejudicial to our ability to go forward, even with the new governmental regulation. That instruction was erroneous based upon judicial estoppel law established by this court. But what difference does it make what was said about a wheelchair under the new regulation? Well, Your Honor, I agree. It doesn't make any difference, but the court – the district court felt it did. But that wasn't – it said whether it made a difference under the old regulation or a difference under the new regulation is a different question. The new regulation only clarifies the prior law, which is that you have to modify a policy. If a person with a disability asks you to modify it, and it can be modified in order to allow them full and equal enjoyment. That's always been the law. The new regulation just makes it clearer that segues are included in mobility devices. It was never specified before what the policy modification language was. So you think the new regulation doesn't make any difference? I think the new regulation – Well, it reaches the same results. Spells out the onus on the amusement parks to allow persons with – who use segues to come in with their segue, unless they demonstrate this very high standard to show that it would be unsafe for them to do that. I do think it does specify and make it clearer what the law is, but I believe the law has always been – Well, the new regulation says it will make reasonable modifications in its policy to permit the use of other power-driven mobility devices by individuals with mobility disabilities, unless certain things that can't be operated in accordance with legitimate safety requirements. That doesn't say anything about a wheelchair, does it? It doesn't, Your Honor. But see, the ADA never did say what a mobility device was. It talked about wheelchairs, but it didn't say other devices couldn't be used as mobility devices. It just left it open, and it said that businesses have to make reasonable accommodations to policies. In this case, we asked for reasonable accommodations for policy. She uses a segue. She's never used a wheelchair. She needs her segue to get around, and they want to stick her in a wheelchair. And nobody who doesn't use a wheelchair wants to get stuck in a wheelchair. Nobody who stands wants to be told they have to sit. Well, you say that she's never used a wheelchair, but she's obviously in earlier cases said that she has used a wheelchair. Isn't that right? In three prior cases, Your Honor, my office mistakenly alleged that she used a wheelchair. And she apparently mistakenly never read the papers you filed on her behalf. Your Honor, that's not uncommon for many of my clients to not read the pleading state. Well, your office then apparently doesn't talk to her before it writes the papers. There's some screwy here. Your Honor, there's nothing screwy here. If you understand that I run a disability practice, and almost all of my clients use wheelchairs, we picked up language from a prior complaint because we use a lot of the same language in all these cases. Ms. Bowman does represent the unusual portion of the disabled population that has a serious mobility disability. She can't stand and sit on her own without assistance. But she never used a wheelchair. We made a mistake in our office. We have two declarations under oath. And you made a mistake three separate times. Your Honor, in each case, the same language is used. In fact, if you compare it, you will see that we are using form language in each of these cases. But it never became an issue in those cases because nobody ever took her deposition. Every time business found out that their bathrooms were inaccessible, they just said, we give. They never took her deposition. There was never a discovery. The court was never involved. At this point, given the new regulation, I'm not sure it matters whether she ever used or didn't use because as I read the regulation, she's allowed to use the mobility device of her choice unless Disney can show that it's unsafe. Your Honor, it's exactly the same. Yesterday, I didn't use an electric wheelchair. Today, I do. If I tell Disneyland I want to come in with my electric wheelchair. That's not what Jeff Fletcher's question is. I think he and I have been trying to ask you the same question. Isn't a wheelchair irrelevant under the new regulation because you're allowed to use the power-driven mobility device? The only concern I have with that is that it makes it seem like it was relevant prior to the regulation. And I don't think it was relevant prior to the regulation. It doesn't make it seem that way. It doesn't matter. The question is to let the district court have the opportunity with the new regulation to consider the issues under that regulation. Your Honor, this is really important. The court is laboring under the misconception that necessary means that you have some limited access. In other words, since she could use the scooter at Disneyland, that she had access. I'm sorry. When you say the court is laboring, the district court? The district court thinks that some access. But that's prior to the promulgation of the new regulation. But the new regulation did not change what full and equal access means. But it certainly clarifies, and I think makes it very explicit, that someone who needs a mobility device gets to choose whatever mobility device he or she wants, and that qualifies as necessary under the terms of the statute, which the district judge didn't think was the law prior to the promulgation of the regulation. So the district judge, in your view, might have misunderstood the law. Now, in light of the regulation, assuming the regulation is valid, I don't think the district judge is going to understand the law at all because the regulation is now very clear. Right. Now, Judge, I'm going to ask you a question at the outset as to whether we shouldn't simply remand to the district court given the passage of the new regulation. I have one hesitation about that, and that is there is apparently in front of us a challenge to the validity of the regulation. That is to say there's an argument that is inconsistent with the statute. Is that question probably in front of us as to whether or not the regulation is valid? I don't believe it's been briefed by the parties. There was an amicus brief by the DOJ. We have a brief from the government? I'm sorry? We have a brief from the government on the point? You do have a brief from the DOJ. I believe that their regulations and interpretations are binding on this court unless there's some argument that it goes beyond the scope of the ADA, and I don't believe that that argument has been fully briefed before this court. I believe that the court is correct that it should be remanded for interpretation of the regulation, but I'm afraid that the district court, without further instruction from this court, might again assume that the necessary standard means full and complete access. I'm going to say the same thing to you that Judge Reinhart said to the last lawyer. Why are you so agreeable? Why don't you stand up and say no? You know, you want this court to decide this is a legal issue. There's nothing the district court can add. Why don't you just go ahead and decide the issue? Now, come on. You're a lawyer. Argue. Thank you. Your Honor, I'm agreeable to remanding this case to the district court, but I think there are plenty of facts. It's not a factual question. It's a legal question. We've got two legal questions now in front of us. One of them is the validity of the regulation. Disney has briefed it, and the government has opposed it. So it seems to me we have briefed them on that question. We should be able to decide it without the help of a district judge. We are, after all, three circuit judges with 300 years of combined experience here. And then there's another legal question we should also be able to decide, and that is the underlying question of whether or not necessary with or without the regulation means absolutely necessary or necessary as in inclusive necessary, or exclusive necessary as in nothing else will do, or necessary as this is one means of achieving that end. Those seem to me to be two legal questions, and I would have expected the only answer to my colleague's question is to say, no, you guys should decide right here and now. Well, some people say that, and some people on the court even say that, and they may be right. Other judges, and I don't choose sides at the moment, others think the district court has something to contribute to our understanding of the law, and others think that we ought to let the district court first give us their view of what the law means and is. Well, I wouldn't say that's what I thought. I just thought that's what counsel would argue. I agree with Judge Kuczynski. We're perfectly capable of doing almost everything without the district court. But, you know, it's one option, and you may not like that option, or you may like the option. Why don't you ask us how we would decide the question, and then you can tell us whether you want us to decide it. Well, that's what I intended to do. Well, it's ultimately going to come back here anyway. Whether we let the district court decide it or we decide it, it's ultimately going to come back, and we or this panel or another panel of this court will decide it, right? I would think that you would probably sooner have the question decided sooner. I would guess that the same would be true of your opposing counsel. You'd just sooner have the question decided and done with rather than dragging the case on. Then let me tell you, I would like this court to decide the issue of whether or not the new regulation is valid or not. Let me tell you why you're wrong about that. I'm kidding. I would also like for this court to rule that I should have won on summary judgment because I had my own motion. We had stipulated facts that my client is a person with a disability and that they denied my client. How could you win on summary judgment since Disney claims in defense that this is dangerous? Your Honor, on the issue of liability, their own experts, I'm sorry, their person most knowledgeable, said that the reason that Segways were excluded was because they were worried about the speed, and there is obviously a reasonable solution to that. Tell people to go slower. That was the reason that Segways were excluded. It's sort of the same thing about bicycles, you know. You can only go so slow before you tip over. That's the problem with two-wheel vehicles. It's not like that. That's erroneous. A person could stand perfectly still here in front of you on a Segway and not tip over. I saw President Bush. Yeah, I know. Everybody saw that video. That's not what Segways do. They're the best thing next to walking. If I could use one, I would. Yeah, but I have to say that the question is whether or not a Segway is dangerous within the meaning of the regulation, and that Disney, therefore, has a right to ban their use or limit their use. I don't think we can decide it on this record. No, and I don't think you should. The only question is whether Tina Bowman, who has 600 hours on a Segway, is a disabled mother of three, could use her Segway at Disneyland. That's the only question. Yeah, and I don't think we can decide that on this record. That one seems to have to go back to the district judge. But that is on the next question, and that is on your cross-motion, right? I mean, I'm trying to understand a little bit what you're saying. I agree that I don't think we can decide it, but are you saying that we could carve out an exception for your client that would apply to no one else? What I'm saying is, number one, Disney's motion should not carry on that subject. And number two, I had a cross-motion. If you get rid of— Yes, yes, we'll talk about your cross-motion. Right. And if you look at my cross-motion, which is part of the excerpt of the record, you'll see that I had proven my case on the ADA violation by Disneyland, and that I had sufficient facts to warrant— Did you cross-appeal? I did not cross-appeal. I included—I'm not sure if I included— Yeah, I don't think you did. I don't think you can get that relief then, because they didn't get a chance to oppose. Well, I'm arguing what I would like to happen. And just to set your mind at rest, not as to the other two judges, but as to me, if you had cross-appealed, you would lose in front of me on that question. Okay. That is to say, I would not give you a summary judgment on the new regulation on this record. Those federal courts professors are very tough on you. The one thing that I'm very concerned of before this court—before I stop is the judicial estoppel hanging out there. I submitted a declaration under oath, as well as my co-counsel, Mr. Goldsmith, that we made an error. My client said she never read the complaint. My client said that she was unaware of these allegations. She was surprised at the deposition to see this form of complaint. All of the under oath testimony says, mistake, mistake, didn't know. And now the court says, well, we don't believe you. Well, what they're doing is really impugning my integrity as an attorney after 23 years of practice and good standing. And that's something that should not abide. If an attorney says, I made a mistake, and there's no other evidence, sworn evidence showing that he didn't make a mistake, the court should accept that. Well, perhaps. But it seems to me you made another mistake, and that was the mistake in this case in having your client claim, I've never used a wheelchair, which may be true. But under your theory, it should be irrelevant. I agree it should be irrelevant. But if anything, all it is is a competing fact. I am right, yes. They can cross-examine her on the subject and say, isn't it true? Well, yes, but I didn't read the complaint. It's never true. I don't have any medical records that show I ever used a wheelchair. Nothing in the records shows I used a wheelchair except these mistaken allegations. And she should be able to tell a jury that and be cross-examined on that. But she should not lose on summary judgment because there was a mistake in the pleadings. Well, it seems to me that you're advantaged if you go in front of a jury if the question as to whether she's ever used a wheelchair is put before the jury because then we're going to get testimony that suggests that she's a liar, which she may or may not be. But if the question as to whether she used a wheelchair is irrelevant to the question in front of the jury, if I were you, I'd want to keep every mention of a wheelchair just out of there. Your Honor, I agree. I agree. Sorry to be so agreeable. Well, this is a unique morning. Oh, I don't know. I don't know what I said with you. May it please the Court. Daniel Fears of Payne and Fears on behalf of Walt Disney World Company, also referred to as Disneyland, resorted throughout the pleadings. Do you want to be agreeable too? I will attempt to be agreeable, Your Honor. I will attempt anyhow, but I haven't heard any questions yet. What's your position on whether this should be sent back to the district court to reconsider everything in light of the new regulation? Well, since this is a regulation that was enacted effective March 15th of 2011 and was not in effect, of course, certainly during 2006 when this issue arose, it should either be disposed of out of hand or at most we should have some record developed with respect to it. Disneyland Resort has not even had the formal opportunity to oppose the DOJ. We did make a motion to have our opposition filed with the court, and I think that's still pending before the Ninth Circuit. But this, of course, has been raised for the first time on appeal by the appellant and then by the DOJ, and we've attempted to oppose it. And our position is, Your Honor, that the DOJ's new regulation does violence to what the statutory language, the plain meaning of the statute, the unambiguous statute. And so Disneyland Resort's position is it should be rejected out of hand. It changes radically both. So your answer to Judge Reynolds' question is no. The question was do we remand for the district court to consider the regulation, and this was sort of a long detour in the old thinking process, thinking out loud and all of that, but the bottom line is no. I say no, reject it out of hand, or if there's any question, then let the district courts develop a decision and then we have a process. You mean if you win, we shouldn't send it back? I'd be agreeable with that, Your Honor. So I can be agreeable. So I got that part. If we decide to reject it out of hand, you're fine with that. But what are the circumstances in which you say, gee, if we have questions, we should send it back? What kind of questions? I didn't get that part. Yes, and those questions, Your Honor, would be whether or not on this record this regulation passed years later should apply, whether or not the language of it applies to the court. But that's something we can decide without the help of district court, as to which you should have a position. Does a later enacted regulation apply to conduct that happened five years earlier? I don't know the answer to that off the top of my head. I would think it does. I would think that the court applies the law as it exists at the time of assertion, unless there is a problem with retroactivity. So it falls in one of the categories where you've got a retroactivity problem. Now, I'm not sure I see what the retroactivity problem is here. The regulation explicates the statute. The statute was in effect. This is sort of a refinement of what the statute means. I'm not sure what. Once again, in an effort to be agreeable with the court, I would agree that this court certainly is capable of interpreting that regulation and whether or not it should be applied. No, I'm sorry. I don't think I put my focus quite right. I was really not addressing the question of we should or district court should. I was really going to the question of does this regulation apply. Whoever decides, we or district court, does this regulation apply to the conduct of 2006 or not? And I was suggesting that it should just off the top of my head. And you obviously or you may have a different view on that. I do, Your Honor. I believe that Chevron deference should not be afforded, that this is a complete change and a contradiction with the unambiguous statement of the law under the ADA. And the unambiguous statement of the ADA, as decided by the U.S. Supreme Court in the Martin case, is a complete contradiction with the unambiguous statement of the law in the D.O.J. case, and at least eight decisions that we cited in either our opposition brief to this motion for summary judgment or in the proposed opposition to the D.O.J.'s amicus brief. Yes. Let me review the betting. Apparently, I was not quite familiar with all the – you've got a brief that you're seeking to file, and you've got a pending motion attached to it. We did file some time ago, Your Honor, a motion for the court to – I got it. Right. And your argument for the moment right now is that the regulation is simply invalid. That's correct. Assuming that we disagree with you on that point, and that we were to conclude that the regulation is valid, then the question is Judge Kaczynski's question, do we retroactively say, well, this is what the regulation says, the regulation is valid, and we will assume that the regulation was enforced at the time of the operative events in this lawsuit back in 2006? That is a question that has not been fully briefed, Your Honor, and that raises a different issue or question as to whether or not a subsequent regulation passed in 2011, which, in our view – Assume it does. Assume a subsequent regulation applies to what happened in 2006, and the regulation is valid. Are there remaining issues? Certainly, Your Honor. There would be remaining issues as to whether or not this proposed modification of Disneyland's rules is, A, reasonable, and, secondly, whether or not it presents an alteration, fundamental alteration of Disneyland's premises, that is, whether it's safe or not for individuals to use a Segway or any other preferred mobility device. And are those factual questions, or are they questions we can decide on this record? On this record, you can decide them, because we have submitted into evidence, Your Honor, an expert, a vice president of safety who is an engineer, who is responsible for making such determinations in the context of Disney World and Disneyland Resort as to whether it's safe, and that was submitted into evidence and not contradicted by any admissible evidence. In other words, the only evidence that contradicts that at most, which it doesn't, is plaintiff's or appellant's self-serving statement that I could use my Segway. You know, most statements are self-serving. It's self-serving, but there's a lack of foundation. She has not – So the argument is not that it's self-serving. The argument is that the lack of foundation is probably not true. I'm sorry. I'm just objecting to the gratuitous characterization of an affidavit as self-serving. Virtually all affidavits are self-serving. Fair enough, Your Honor, but I mention it in the context of someone who has not, in at least 30 years or so, been at Disneyland Resort, conducted any analysis of the crowd, the structures, and whether or not a vehicle that travels 12 1⁄2 miles an hour has no steering wheel, has no brakes, and there's an abundance of evidence that's set forth in our opposition to the DOJ brief regarding the perils of Segways. I probably need not remind the Court that the owner of the Segway company had an accident, fell off a cliff and died on a Segway. You need look no further than YouTube to see the number of accidents. Do you think she'll go off the Matterhorn? Pardon me? Do you think she'll go off the Matterhorn? I don't think the Matterhorn, Your Honor. I think what, quite frankly, Disneyland Resort is not unsympathetic, certainly, to individuals with disabilities and trying to accommodate them. We've been doing it for years, and there's thousands of disabled individuals that attend Disney. Disney has been a business, right? It's been ahead of the curve in terms of accommodating individuals, even before the ADA. But the problem is where you have a vehicle like a Segway, a two-wheeled vehicle that potentially imperils other individuals, children, elderly, in a crowded situation. Just because, and the reason, Your Honor, I said self-service, just because somebody says, well, gee, I can do it, I can do it safely, and they haven't visited, they haven't conducted any studies like our expert has. No, no, that's not the reason you said self-serving. It's just a word to dirty up an affidavit. Well, okay, and I'll withdraw the self-serving, but there's a lack of foundation and there's not any competent evidence. That's a different matter, and I fully agree that that's a perfectly legitimate ground on which to- I see them running around at Burbank. Pardon me? Have you been to Burbank Airport? I have been to Burbank Airport. The guards have them. They seem to do fine. There are crowds of people. Burbank is a very busy airport. They manage to- There doesn't seem to be any problem. I would say, Your Honor, there are certain locations. I mean, Disneyland Resort is not wholesale against the concept of Segway vehicles. There are locations. I mean, outside this building, for instance, there are locations- Yeah, I'm talking about Burbank Airport, which is small, crowded, you know, lots of people in a rush, people carrying luggage. So I don't know. Neither my expert nor I have conducted the analysis there, but I will say this, that Disneyland Resort is probably one of the most crowded, densely populated with guests and employees areas in Southern California. I'd equated almost, I mean, maybe second to Times Square on New Year's Eve. It is very crowded. I don't know if the justices have been there. Our expert has presented evidence that it is- All right. Well, the evidence your expert has presented, according to the Department of Justice, is not enough under the regulation, that it doesn't comply with what you need to establish. You want us to decide that question up here and say that you have not established a safety defense if the Justice Department is right. Well, the Justice Department submitted a brief that addresses the regulation. They were not a party to the case below your- No, no. They've also submitted a brief on whether your defense, based on your expert, is sufficient under the regulation. And that is the- I understand that that is the Department's opinion, but they have not cited to nor provided any competent evidence themselves. In other words, on the summary judgment standard, where the defendant has presented evidence of it being unsafe, competent evidence to an engineer and a director of safety and someone who has analyzed the Segway, someone who is familiar with the Segway, someone who has used the Segway, and neither Department of Justice nor the appellant has presented any evidence indicating that it is safe to go down Main Street in Disneyland Resort, where there's thousands of people and children and elderly people, where they presented no evidence, I would say, Your Honors, we are still entitled to summary judgment with respect to that. All right. Based upon this record- I thought you said you want us to resolve the question of whether what you submitted complies with the regulation of the new regulation, whether it complies with what you need to establish for safety defense. Yeah. And you want the whole case settled up here now. Well, in response to Justice Fletcher's argument or, I'm sorry, question that was asked about whether or not assuming we, that the regulation would apply and assuming the DOJ's position had merit or validity, would there be any other basis to uphold the summary judgment? And my answer is yes, because on the record that you have in front of you, even going to that next question, assuming the standard for argument's sake was that a disabled individual could have any mobility device that they preferred, motorcycle, for instance, and according to the DOJ now the burden is switched to the company to establish that that motorcycle or other vehicle is unsafe. On this record, with respect to the segue, we have presented evidence that it is, in fact, unsafe. The appellant has not and, therefore, still entitled to summary judgment. So I was addressing, Justice Reiner, the question asked about whether summary judgment would still be appropriate even if the regulation were accepted and the DOJ's view accepted as well. If I may, regarding the question of judicial estoppel first, I mean, ultimately the focus here is on the statute, the current statute, and obviously Disneyland Resorts takes issue with the new regulation and whether or not it contradicts an unambiguous statute. But with respect to the necessity of a segue, it is the appellant or plaintiff's burden to prove that it's both reasonable and necessary to deviate from a Disneyland rule. And according to the statute, the specific language of the statute, they must prove that it is, in fact, necessary and without that deviation from the no segue or no two-wheel vehicle, they are essentially precluded. And the record... Well, that's your argument, assuming that the regulation is invalid. That's correct, and that's why I was moving on. If the regulation is valid, does the judicial estoppel argument matter anymore? This hasn't been fully briefed, Your Honor. But I would say if the regulation, again, that assumption... Yes, sure. No, I don't ask you to concede it. You're clearly... And I would not. But I think that next argument, I couldn't be so agreeable there, Your Honor. I think that next argument becomes the issue of whether, A, it's reasonable because there's a reasonable and necessary standard, and secondly, whether or not it's unsafe if you're assuming the validity... I think you've gotten away from my question. My question is, assuming that the regulation is valid, does the judicial estoppel argument matter anymore? In one sense, perhaps. Again, it hasn't been briefed because the underlying standard under the ADA says necessary, and the Court found, because of judicial estoppel, that it was not necessary, which is a prong under the ADA. Yeah. You're walking away from my assumption that the regulation is invalid because you're now back to the statute and you're not reading the regulation. Okay. If the language necessary is not there and instead that statute is read to mean preference, then I believe... That is to say it is read in accordance with the regulation. I believe you are correct, Your Honor. I believe. But I haven't fully briefed that because we haven't got there. The point I wanted to make with my limited time about the judicial estoppel... You go ahead. Okay. Thank you. Thank you very much. But judicial estoppel, you just said it becomes irrelevant if the regulation is valid. That's correct. And... You still wanted to make another point about it. I assume your other point is if the regulation is invalid. Exactly, Your Honor. Assuming the regulation is invalid because it contradicts the unambiguous language, contradicts Martin, the Supreme Court case. Okay. Whatever reason. Contradicts eight other cases, as I mentioned before. I was trying to avoid repeating myself. Then on judicial estoppel, I just want to correct something that was stated. But assuming judicial estoppel matters under whatever permutation, the thing it would matter too is the question of whether plaintiff would be able to use a wheelchair. I mean, what is relevant? Let's say it does matter and there is estoppel. What then does that estoppel from? That it stops her from claiming that in order for her to have access to Disneyland Resort, that she needs a Segway. In other words, she's estopped from arguing that point because, and it's not just a wheelchair, Your Honor, it's a wheelchair and motor scooter. We have electric scooters. The record is replete with Disneyland provides electric scooters. And she's barred from claiming she cannot. I'm just a little, I'm confused. You know, I've never used a wheelchair, so I don't know. But I assume that if I got into a wheelchair, I could figure out how to use it, even a fancy one. And I've looked at those little scooters. And I believe I did actually drive one of those little scooters because there was one in the parking lot at Costco. And I didn't know how to move it except to sit on it and get it out of harm's way. So obviously there's no doubt that she could use these devices because it's not rocket science. You don't need a license or anything like that. So I'm not exactly sure what her concession does. I agree with your point, Your Honor, that she could. I agree also that she is alleged three times and received benefit for alleging that she could. And if that's the case, then under the ADA, it is not necessary for her to have some other preferred means. I understand that. But whether she has in the past used them, claimed them in a complaint that she has or not, it seems to me it would be hard to dispute that she, in fact, could use it. I mean, they're just not devices that are used all the time. That's correct. So what does her concession do? That's our very point. Her concession, that concession that she could use that. But you don't need the concession because it seems, let's say she didn't have the concession. What would she be able to say? I can't use a wheelchair? It's hardly credible. I agree with that, Your Honor, but theoretically. I don't think she's ever claimed she can't use a wheelchair. I think what she's claiming is, in my way, in order for me to get full enjoyment of the park, I need to use a Segway. And this turns on one's definition of necessary. Whether something's necessary means there's absolutely no alternative means, or necessary means this is one of the possible means of fulfilling that end. And there's just two different ways of looking at the word, right? Let me clarify, Your Honor. You used, you conflated two concepts, full enjoyment of Disneyland Resort with necessary. And those are two different sections of the ADA. One is a general section regarding discrimination with respect to the accommodation or required modification. All that is required under that statutory section is that we provide her access. It doesn't require preferred access. It just, if she has access through what we provide, and that is whether it's a motorized scooter, whether it's a wheelchair, even an upright scooter that has four wheels, if she is provided access, then she does not need a two-wheel vehicle in order to have access to Disneyland Resort. So that is, the DOJ tried to conflate those two concepts of full enjoyment. Realistically, Your Honor, Disneyland Resort cannot meet the subjective standard, nor could any accommodation meet, public accommodation meet the subjective standard of full enjoyment. That's general language. When we get down to the specific language of the statute, which is 42 U.S.C. 12182b, the specific language regarding the accommodation says that you must provide them, and as interpreted by the Supreme Court in those eight decisions, you must provide them with access, not preferred access. And you know, I'm having some difficulty understanding how you can read necessary as act. You know, there's always an alternative way of doing things. I mean, she could have a litter with, you know, four pallbearers, right? Remember those guys in the Mozart's time, right? I mean, there's always a way of doing it. So I'm not sure how you can get necessary to mean absolutely there's no other means of doing it. And that's our very point, Your Honor. As long as we provide an opportunity, some way for her to access, like we do thousands of disabled individuals every single year, then the fact that she may have a specific preference for a two-wheel vehicle, a motorcycle, a bicycle, whatever, her preference does not mean it's necessary, and the specific language in the statute is necessary. Your very point is to ask if you had four people carrying her on a, what was it? A litter. On a litter. On a litter. If you had four people carrying her on a litter, that would comply with the statute? As long as they bought five tickets, right? Sure. That's not before the court, but that issue is not before the court, but we're talking about mobility devices. Absolutely next. And I don't know that Disneyland Resort regards that as a mobility device, but as long as we provide access with some means for her to go to the park, then certainly yes. Although it doesn't provide full enjoyment, you say. That's just sort of vague general language that really doesn't mean anything. That's part of a different section of the statute, Your Honor, and the specific under statutory construction, the specific governs over very general language. I think I'm back arguing about whether the regulation is valid, because your argument here is clearly inconsistent with the language of the regulation. My argument is inconsistent, yes. That is absolutely correct, Your Honor. If the regulation is valid, your argument is not the one you're now making. I'm sorry, the regulation is invalid, yes. See, I'm still stuck on why judicial establishment matters. Your position is, look, we provide these other means that she can use the park. Why does it matter whether she's ever used them before or not used them before? Unless she says, look, I don't have fingers or, you know, I'm physically unable to use a standard wheelchair or a standard scooter. There are some disabled people who can. They just don't have the fingers to do it. But unless she claims that, what does it matter whether she has in the past used them or not used them? What difference does that make? Because the allegations of the complaint and the position that the appellant has taken throughout the litigation is, legally, in the pleadings, that the only way that she can have access to the park under the ADA is with a two-wheeled device which violates our rule. She's saying segue only. And theoretically, I suppose one could construct something where maybe it's possible there's a person in the world that they couldn't sit down, for instance. They couldn't sit on the scooter or something like that. And so theoretically, someone that can't, and there's no allegation that the appellant here has a sitting disability. But theoretically, if it were possible that she couldn't sit down and there was no other way and the evidence was that the segue was the only way, then we'd have to get into the issue ultimately if it's safe and so forth. In this case, however, there's an admission, judicial admission or through judicial estoppel. There are statements by, in the complaint, three times, not once, not twice, three times, an expert report. And there's also, by the way, in the record, plaintiff admitted at her deposition that she read the complaint. And that's specifically at the record page 593. So those admissions are that she, in fact, has used other mobility devices. It just so happens we provide those mobility devices. We also allow, would allow a stand-up four-wheel mobility device as well, which is anecdotally. I guess that's the part I understand. What does it matter whether she has or has not used them in the past? Under the regulation. No, under the statute. Under the statute. Why does it matter? Under your view, so long as she can use them. Then it's not necessary. Unless she has disputed that she can use them. If she said, look, I can't sit on a wheelchair or whatever, then the device is standard. What difference does it make whether she has used them in the past or not used them in the past? I don't understand how that helps you, your argument. It only helps us, Your Honor, because the legal pleadings, they're claiming that she can't. The evidence. You sure you didn't just put it in there to smear her, just to sort of make her. No, that wasn't it. Because, quite frankly. I don't get it. I don't understand how whether she's used it in the past, has not used it in the past, makes a weight of difference. Unless she comes along and says, look, I can't use a wheelchair, that would be a different case. But she hasn't done that. That's our case on the pleadings. I'll admit that she has not specifically said in evidence or her declaration that she can't. And that's why, from a summary judgment standpoint, also, she has not specifically in her declaration said it's impossible for me to use it. Counsel in pleadings and in the complaint has said that. And so we have met that with evidence that shows she's previously alleged that. She's previously gained judicial advantage. She's previously got settlement based upon admissions that she has and can use a wheelchair or an electric scooter, as the Court has indicated, and received economic advantage and forced three other entities to modify sinks and raise things and so forth based upon allegations in that complaint, which she admitted she read the complaint. So that's the reason it's relevant, Your Honor. Meeting their legal allegations in the pleading, we put in evidence showing that she can do those things and thus it's not necessary for her to use a two-wheel vehicle that we have studied and regard as very unsafe in the Disneyland Resort environment. Okay. Thank you. Okay. Thank you very much, Your Honor. Can I have a couple of minutes for a Bible? Just to be clear, what I heard Disneyland saying is that they want a business entity to be able to tell a person what mobility device they can use when they come to their place. They want to be able to take away somebody's mobility device and say, you can use a wheelchair, you must use our wheelchair or your own, but you can't use any other mobility device at Disneyland. You don't want businesses involved in that very, very personal choice of deciding what mobility device best suits somebody's needs. Is your client claiming she can't use a wheelchair? Your Honor, there is an allegation that my client, once seated, has difficulty standing, that she needs assistance. That's why all these other lawsuits she brought claims against these other inaccessible bathrooms They didn't have accessible bathrooms. She didn't have a toilet at the right height, and she didn't have grab bars that she could use to get on and off the toilet. That was the basis of the other lawsuits. There was a mistaken allegation that she relied upon a scooter. It doesn't make any difference. She's a disabled person. She needed an accessible bathroom. And in each of those cases, we went beyond just what she needed, and we got men's and women's bathrooms made that were accessible. She's obviously not a man. So she wasn't misleading anybody that she was a man and forcing them to make a men's bathroom accessible. She was doing what every responsible ADA plaintiff does, which is get them to make bathrooms accessible. I'm a disabled person. I'm entitled to that right, and as part of the settlement, I want you to go beyond what my personal needs are but make an accessible bathroom. That's all those cases were about. Now, she uses a separate – That's a very long answer to my question. Sorry. I'm pumped up. I know, but that doesn't really help. Tell me. So does she claim that she can't use a wheelchair or scooter? She does not claim she cannot operate a wheelchair or scooter. Okay. She does not claim she cannot sit. Okay. But she claims that she can't – Stop, stop. Does she claim that using a wheelchair or scooter is more difficult for her than using a Segway? I'm just trying to understand. I'm not trying to put words in your mouth. I'm really just trying to understand what her claims are here. Yeah. With regards to more difficult, it's a new mobility device. As you know, getting into a new mobility device, you're unfamiliar with it, how it moves, et cetera. You're not comfortable with it. They want her to get in a new mobility device she's never used before and go around in a seated position, which she's never done before, instead of standing. Yes, it's uncomfortable and difficult for her in that sense. It doesn't provide her the same level of experience. Moreover – I can't tell whether this is you extemporizing – No, it's all there. The evidence is there in her declaration. She says exactly that. I can't move around in an uncomfortable and new mobility device in the same way that I can move comfortably in my Segway. It's in her declaration and in her testimony. And, Your Honor, the Segway moves around in a very, very narrow space. It can turn around in place. A wheelchair has to make a big circumference turn. So if you're in a crowd of people, you have to get everybody out of your way in order to turn around. If I was in a Segway right now, I could turn around right where I stand. It's another way. It's less comfortable and not as accommodating to her. She knows her Segway. She operates her Segway like second nature. And just before you ask the next question, I did want to remind the Court that the evidence shows that Disneyland is the largest purchaser of Segways in the country. Their employees use them in the back lots. And they show the Segway in Tomorrowland, and they say the Segway is the mobility device of the future. It's as natural as walking. That's part of their training materials. And after an hour of training, you can use a Segway at Disneyland to tour their park. This is a somewhat hypothetical question, but maybe you don't want to answer it. But let's say that Disney or some other operator or park decided, yes, we think Segways are fine, but we want them to use ours. So in addition to having scooters and wheelchairs, we will have some Segways. And, you know, one of the things maybe they'll do is stop them down so they don't go very fast. You know, I'm not suggesting. I'm just hypothesizing. Would your client still have a claim for using her particular device? And this is a very general question because this applies to everybody in a wheelchair. If everybody can insist on using a personal wheelchair or a personal scooter, If it was the exact same device, Your Honor, and it had the same settings, because they set the bars at a certain level and the platforms sometimes vary depending on the Segway, if it was the exact same device and she didn't have to rent it, right now Disneyland requires you to rent their mobility devices. And if she could take that mobility device into the shopping area, which is called Disney Central, which Disneyland does not allow you to take a rental into the Disney Central, if she had the same access to the park on the same exact vehicle and they just said, we'd like you to use ours instead of yours, I would say, okay. I wouldn't see any discrimination or any problem. But mobility devices are so personal, Your Honor, and Disneyland restricts these mobility devices from going to certain locations, the rentals, and it also requires you to pay, and that's not fair. You shouldn't have to pay a premium for having access to the park. Okay. Okay, thank you. Thank you, Your Honor. Before the record closes, could I just make a formal request that that opposition brief to the DOJ's? Yes, we'll look into it. I must admit, I also was not aware of it, but we will dig it up. Thank you very much. Okay. Have you seen it, Mr. Geffen? I've seen it. What are you talking about? It's the opposition to the DOJ's, which was served, and actually the DOJ did not oppose. In the statement we filed in court, the DOJ did not oppose. We requested Mr. Geffen to advise that he has any opposition, and there was no response to that. When was that served? Oh, two months ago. I'm sure I must have gotten it, Your Honor, but I'll ask him for another copy. Well, we seem to have missed it, too. It must be somewhere in the system. Why don't we give Mr. Geffen 48 hours to express a view, if he has a view, as to the filing, and then we'll do whatever is necessary. Out of an abundance of caution, I'll file it again with the courts and Mr. Geffen so they make sure everybody has a copy, and then 48 hours. I have no doubt we can dig it up. If you feel more comfortable doing that, you can go ahead and do it. I'm sure that whatever the glitch is, we will straighten it out. Thank you very much. Okay. Anyway, Mr. Geffen, you have 48 hours to oppose or whatever you want to do, or if you want to ask more time to address the points in there, you can do that. Okay? All right. Case is argued. We'll stand submitted. We'll next hear argument on the last case from the calendar, Fremont Steel v. City of San Diego.
judges: Kozinski, Reinhardt, Fletcher